Bowen, J
The relief demanded by the plaintiff in his complaint is. in substance, that the defendant may be deprived of the benefit of the exemption of his house and lot from sale on execution, so far as relates to the plaintiff’s two judgments, and to the sale of the house and lot on executions issued on those judgments, and this relief was awarded by the referee. The representations, therefore, of the defendant, as to his solvency and pecuniary ability generally, were wholly irrelevant and immaterial.
The defendant, for the purpose of inducing Sage & Pan-cost to sell him goods, represented to them that his house and lot was unincumbered, except by a mortgage for $300 or $400, and that there was no other claim or incumbrance thereon; when, at the same time, he knew it was exempt from sale on execution, by virtue of the provisions of the act of April 10th, 1850, and the question is, was the representation false ? or, in other words, did the exemption constitute a claim or incumbrance on the land ? I think it did not. After the exemption was created, the defendant had the same title to and interest in the land, and the same power to dispose of it as before, and no other person acquired any rights thereby. The legal definition of the term ‘ ‘ claim,” as given by Jacobs, is “ a challenge of interest in any thing that is in the possession of another, or at least, out of a man’s own possession,” or, as quoted by Jacobs from Plow-den, giving the definition of Chief Justice Dyer, “ a challenge of the ownership or property that one hath not in *492 possession, but which is detained from him by wrong.” An incumbrance is a legal claim in favor of one person on the estate of another.
The representations were made by the defendant in answer to inquiries concerning his property, and it must be held that those terms were used by him with reference to their legal definition, and Sage & Pancost must have understood that they were so used.
The exemption was in favor of the defendant, and of no other person, although designed for the benefit of his family as well as of himself. One cannot have a claim to, or incumbrance upon, land to which he has a complete title, including the possession; as the latter comprehends and merges the former. The exemption constituted an impediment or bar, to the right of the plaintiff to resort to the land to obtain satisfaction of his judgment, but in no sense of the terms was a claim to, or incumbrance on, the land. Had the referee found that the representations were made with the fraudulent intent of causing Sage & Pancost to believe that no such exemption existed, and that they produced the effect intended, such finding would, doubtless, be sufficient to support the judgment entered upon the report; but he has simply found that the representations were made, and then has adjudged they were false by reason of the existence of the-exemption. In this I think he erred, and that the Supreme Court was right in reversing the judgment entered upon his report.
But the complaint sets forth a good cause of action, as it is alleged therein, not only that the representations were made “ with intent to deceive and mislead Sage & Pancost, and induce them to trust him, and then that he.might set up such claim of $1000, and thereby cheat and defraud them out of their demand, and prevent their enforcing the collection of the same.”
That part of the judgment of the Supreme Court which dismisses the complaint should, therefore, be reversed, and *493 a new trial be ordered, with costs to abide the event. (Astor v. L' Amoreux, 4 Seld., 107.)
Johnson, J.
Chapter two hundred and sixty of the laws of 1850, exempts from sale on execution for debts thereafter contracted, the lot and buildings thereon, to the value of $1000, occupied as a residence, and owned by the debtor, being a householder, and havin'g a family. This exemption is to continue after the debtor’s death for the benefit of his widow and children, provided the debtor does not himself otherwise dispose of the property. In order to make available this exemption, the conveyance of it, showing the design that it shall be exempt, or a notice to the same effect, must be recorded in the clerk’s office of the county where the property is situated. To this broad exemption the statute has annexed the exceptions that no property shall, by virtue of its provisions, be exempt from sale for non-payment of taxes or assessments, or for a debt contracted for the purchase thereof, dr prior to the recording of the deed or notice.
Against executions for other wrongs than the non-payment of debts, the statute does not profess to afford any protection. It is not denied that the executions in this case are executions for debts, nor is it claimed that any question of fraud in contracting those debts was made or passed upon in the suits in which the executions have issued, nor that the case falls within either of the exceptions stated in the statute. But it is insisted that after the exemption had been made effectual by the recording of notice, the debtor falsely represented that he had property more than sufficient to pay his debts, and, to take it most strongly for the claimant, that it was all subject to sale on execution; and that by means of these false representations he obtained credit for the amounts for which judgments have been recovered. If the fraudulent representation, by which he had obtained the credit, had related to any other particular in the condition of his property, as for instance, that he was the owner of a par *494 ticular store, it would never have occurred to any one to suppose that on an execution for the debt, property within the exemption could be sold; and it is only on the ground of the accidental coincidence between the means by which the fraud was effected, and the subject on which the remedy is now sought to be made operative, that the plaintiff’s claim assumes any plausibility.
The statute is founded upon considerations of public policy, and has introduced a new rule in regard to ¿he extent of property which shall be liable for a man’s debts. The legislature were of opinion, looking to the advantages belonging to the family state in the preservation of morals, the education of children, and possibly even, in the encouragement of hope in unfortunate debtors, that this degree of exemption would promote the public welfare, and perhaps in the end, benefit the creditor. Having framed this new rule according to their estimate of what was wise, they also stated the exceptions to it. The fraud alleged is not in obtaining the exemption, nor is it charged that it was obtained with any intent, by means of it, to perpetrate a fraud. The plaintiff does not proceed on any such ground, but seeks to engraft upon the statute a new exception as to which the legislature has been silent. This is beyond their, power, and beyond that of the courts. If we break in upon the terms of the statute upon equitable grounds, we cannot, limit ourselves to any single exception, but must follow wherever it shall lead, the principle we shall thus have established. In that way, instead of the certain rule of the statute, we shall have an exemption to be overruled in all cases when equity seems to require it to be disregarded., The safer course is to leave the legislature to introduce such exceptions as they shall from time to time think fit. Doubtless, if they shall discover that the statute as it stands, gives opportunity for successful fraud, they will afford a remedy, If the plaintiff will recover such a judgment that his execution will be on a recovery not for debt, but for fraud, the *495 exemption will not stand in his way, but until he does so, he cannot be entitled to touch this property.
In the view I have taken of the statute, the case made by the complaint and by the proof, cannot possibly afford ground for a recovery. But as five of the judges do not now concur in this view, and as some members of the court think the referee wrong in construing the defendant’s representations as amounting to an affirmation that this property was not exempt from execution, the cause must go down for a new trial.
Denio, C. J., and Selden, J., concurred in the views of the policy of the statute expressed by Johnson, J. Shank-land, J., was for a new trial upon the grounds stated by Bowen, J. Comstock and Brown, Js., not having heard the argument, took no part in the decision.
Judgment reversed, and a new trial ordered, with costs to abide the event.