(63 App. Div. 445.)

## METCALF v. CRYSTAL BROOK PARK ASS'N.

(Supreme Court, Appellate Division, Second Department. July 25, 1901.)

WILLS—CONSTRUCTION—EASEMENT—PERSONAL PRIVILEGE.

Testator bequeathed to a daughter all of a certain neck of land, and to another daughter a neighboring island, and the will provided that the second daughter should always have the privilege of spreading any hay that she might cut "in the harbor" on the neck given to the other daughter. In the clauses of the will in which devises of real estate were made, words of inheritance were used, but they were not used in connection with the provision as to the second daughter's right to spread the hay. *Held*, that it was not the intention of the testator to create an easement as appurtenant to the island, so as to give her successors the right to spread the hay cut thereon on the neck, but that a mere personal right was conferred.

Appeal from trial term, Suffolk county.

Action by Charles P. Metcalf against the Crystal Brook Park Association. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

Thomas J. Ritch, Jr., for appellant.
A. A. Spear, for respondent.

SEWELL, J. The appellant is the owner of an island in Mount Sinai harbor known as "Tooker's Island." The respondent is the

owner of the mainland near said island known as "Crystal Brook Neck" or "Tooker's Neck." Nathaniel Tooker, the common source of title, died in 1799, leaving a will, the material portions of which read as follows, viz.:

"Item. I give and bequeath to my oldest daughter Hulda Tooker all my neck of land that I now live on call [sic] Christle crook neck together with all the salt meadow adjoining said neck. * * *

"Item. I give and bequeath to my daughter Nancy Tooker all the remainder of my lands and meadows wherever they may be found either on deed or record to her and her heirs forever. * * * Also it is my will that Nancy should have the privilege always of spreading hay that she may cut in the harbor on the neck which I have given to Huldah and of carting it through said neck in a reasonable manner."

The plaintiff derived title to the island through mesne conveyances from Nancy Tooker, to whom the island passed under her father's will. The title to Crystal Brook neck came by successive conveyances to the defendant. This action was brought by the plaintiff to recover damages for being prevented from spreading on the neck of land in question the hay cut on the island. The vital point in the plaintiff's case is involved in the construction and meaning which should be given to the clause of the will granting this privilege to Nancy, since he cannot succeed in this action unless the privilege granted was of such a character as to be in the nature of an easement, which attached and passed as an appurtenance to the land devised to her. It is quite obvious from reading the will that no such easement was granted. The principal requisite of an easement is that it be imposed upon corporeal real property, for the benefit of corporeal real property, and that there be two distinct estates,—the dominant and the servient. Bouv. Inst. 1625; Nellis v. Munson, 108 N. Y. 453, 15 N. E. 74. The will did not provide, in terms or by implication, that Nancy shall have the privilege of spreading or carting the hay cut on the island, or from any other land devised to her. No distinct dominant estate is described or mentioned in the will to which the privilege could attach or be appurtenant. The contention that the clause should be read as if the testator had written, "It is my will that Nancy should have the privilege always of spreading hay that she may cut on the island," is subject to the objection that such a construction requires something to be inserted that her testator never assented to. He used no words which necessarily connected the privilege granted with the occupation or enjoyment of any land owned or devised by him. There is nothing in the will to indicate that the testator intended to connect the privilege granted with another tenement. The words "hay that she may cut in the harbor," in their immediate connection, are only descriptive of the hay that may be spread, and have no reference to any distinct piece or parcel of land to be benefited by the grant or privilege. They only serve to identify and define the privilege granted, which is general, in that it is not limited to the island or to the land owned by the testator. It is only by the use of plain and direct language of a testator that it should be held that he created a right in the nature of an easement, and attached it to one parcel of land as the dominant estate, and made the other servient thereto for all time to come.

Clark v. Devoe, 124 N. Y. 120, 26 N. E. 275, 21 Am. St. Rep. 652. It is clear from the provisions of this clause, standing alone, that the privilege impressed upon the land was intended as a mere personal privilege or right in gross in favor of the plaintiff grantor, which terminated with her death.   The intention of the testator to create an easement, right, or privilege personal to the plaintiff's grantor also appears from the fact that the grant is without words of inheritance or perpetuity, which was then necessary to convey anything more than a life estate.   Prior to the adoption of the Revised Statutes (1 Rev. St. p. 748), in 1830, the term "heirs," or other words of inheritance, were required to create or convey an interest in fee. It is a familiar proposition that a testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless from the context of the will it appears that he has used them in a different sense.   Harvey v. Olmsted, 1 N. Y. 483.   It is evident that the testator knew that words of inheritance were necessary, from the use of them in the clauses of the will devising the real estate; and the omission of them in granting the privilege must be construed as evidence of his intention to limit the grant to the lifetime of Nancy.   The whole instrument shows an unmistakable intention that the privilege should not be permanent, or apply to any one but the grantee named.   That was the established construction of a devise containing no words of limitation at the time of the making of the will.   It is the literal, and hence natural, interpretation of the language used, and, as the parties stand in the place of their common grantor, each is held to a strict construction of the words of the grant.   We have, therefore, come to the conclusion that the grantees of Nancy Tooker did not become entitled to spread their hay upon the land devised to Huldah, and that the acts of the plaintiff in spreading his hay upon the defendant's lands were unlawful, that the defendant did not interfere with any rights of the plaintiff in removing the hay, and that the judgment should be affirmed, with costs.   All concur.